# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
# HARRISBURG DIVISION

| | |
|---|---|
| JOSEPH WHITAKER, <br> SANDRA WHITAKER, <br>     Plaintiffs <br> <br> vs. <br> <br> PFIZER, INC., <br>     Defendant | ) <br> ) <br> ) <br> ) <br> ) CASE NO.: _____ <br> ) <br> ) <br> ) |

## COMPLAINT

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1332, for diversity of citizenship and Plaintiffs claim an amount in controversy exceeding $75,000.00.

## PARTIES

1.  Plaintiff, JOSEPH WHITAKER, is over the age of 19 years, and is a resident citizen of Enola, Cumberland County, Pennsylvania. Joseph Whitaker suffered a heart attack in February 2003, while using the prescription pain reliever, Bextra®.

2. Plaintiff, SANDRA WHITAKER, is over the age of 19 years, and is a resident citizen of Enola, Cumberland County, Pennsylvania. Sandra Whitaker is, and was, at all times relevant hereto, the spouse of Joseph Whitaker.

3. Defendant, Pfizer, Inc., is a corporation of the state of Delaware, with its principal place of business in New York. At all relevant times herein, Pfizer was in the business of promoting, manufacturing and distributing Valdecoxib, known more commonly as Bextra®. Defendant does business in Pennsylvania and, at all relevant times hereto, marketed, promoted, warranted and sold Bextra® in Pennsylvania.

## FACTS

4. Valdecoxib or Bextra® is a medication for relief of pain from osteoarthritis, rheumatoid arthritis, menstrual cramps, and acute severe pain.

5. Joseph Whitaker was prescribed Bextra® on August 8, 2002, for management of severe pain caused by arthritis. Joseph Whitaker used the Bextra® daily as prescribed for pain relief.

6. Joseph Whitaker suffered a heart attack in early February 2003, as a proximate consequence of using Bextra®.

7. G.D. Searle & Company ("Searle"), a pharmaceutical company, was the pharmaceutical unit of the Monsanto Chemical Company. In April 2000, Searle and Monsanto merged with the pharmaceutical manufacturer, Pharmacia and, as a result,

Pharmacia became the successor-in-interest to Searle. On April 16, 2003, Pfizer acquired Pharmacia, its assets and liabilities included.

8.  Searle actually filed the New Drug Application for Valdecoxib in 2000 and Pharmacia was awarded the Approval Letter by the Food and Drug Administration in November 2001. Distribution and sale throughout the United States, including the Commonwealth of Pennsylvania, was undertaken by Pharmacia, and, subsequently, Pfizer. Bextra® is the brand name used by Pfizer to market and distribute Valdecoxib.

9.  Defendant Pfizer and its predecessors in interest marketed and promoted Bextra® as being safe and effective for relief of pain for patients like Joseph Whitaker.

10. Defendant Pfizer and its predecessors in interest did not inform either patients using Bextra® or their prescribing physicians that Bextra® carried an increased risk of cardiovascular injury and death, until approximately November and December 2004.

11. Pfizer and its predecessors chose to place these adverse health risks on their consumers, despite their knowledge at product launch and in post-marketing data thereafter, that use of Bextra© carried significant risk factors. These adverse effects were realized in adverse-event reports, in clinical trials conducted by Pfizer, and Pfizer studies that showed statistically significant increases in adverse cardiovascular events among Bextra® users. Bextra® is in a class of drugs known

as cyclo-oxygenase 2 inhibitors (Cox-2 inhibitors), which has demonstrated an increased risk of cardiovascular and thrombotic events in users. This information, although documented and known to the pharmaceutical manufacturing industry, including Defendant Pfizer, was not disclosed to the consumers and prescribers of Bextra® until just recently. Even now, Plaintiffs are still learning of the dangers and injuries associated with Bextra®.

12.    If Defendant had not engaged in this conduct, patients and physicians would have switched from Bextra® to safer products or refrained wholly from its use.

13.    From 2001 through April 7, 2005, Defendant and its predecessors in interest engaged in a scheme of marketing, distributing, and selling Bextra® under the guise that it was safe and efficacious for patients.

14.    Plaintiffs allege that the Defendant's marketing strategies, including the detail and sampling programs and direct-to-consumer advertising targeted consumers to induce them to ask for, and use, Bextra®. At the time the Defendant and its predecessors distributed, manufactured, and marketed Bextra®, Defendant and its predecessors intended that Plaintiffs would rely on the marketing, advertisements, and product information propounded by Defendant and its predecessors. Plaintiffs did not know, and could not have known, that Bextra® was unsafe or that it had caused injuries and death to the decedent, until April 7, 2005.

15. On April 7, 2005, Pfizer voluntarily removed Bextra® from all markets in the United States because of an increased risk of serious cardiovascular events in association with its use, including sudden cardiac death.

## COUNT ONE

## Strict Liability

16. Plaintiffs adopt and incorporate by reference all the above allegations.

17. At all times material hereto, the Defendant, Pfizer, has engaged in the business of selling, distributing, manufacturing, marketing, and promoting Bextra®, which is unreasonably dangerous, and, therefore, defective.

18. At all times material hereto, Bextra® was sold, distributed, manufactured, promoted, and marketed by the Defendant and was expected to reach, and did reach, consumers, including the Plaintiffs, without substantial change in the condition in which Bextra® left the Defendant's possession.

19. At all times material hereto, Bextra® was unreasonably dangerous, and therefore defective, because:

    a. Bextra® can cause strokes, heart attacks, and death.

    b. Bextra® was marketed and promoted for use as a pain reliever and by design and formulation, carried an unreasonable and unnecessary risk of

serious injury and death. The risk of harm far outweighed the benefit of use.

c. Bextra® was insufficiently and inadequately tested, yet Defendant promoted it as being pharmaceutically tested and safe for use.

d. The instructions and warnings that accompanied Bextra® were inadequate to fully apprise the user of the full nature and extent of the risks and dangerous side effects associated with the use.

e. Bextra® was marketed and promoted directly to the consumer as being safe for treatment of pain, without risk of serious injury and death.

20. At all times relevant here, safer methods and products existed for pain relief.

21. As a direct and proximate result of the actions and inactions of the Defendant as set forth above, Plaintiffs have sustained injuries and are entitled to damages enumerated below. The Plaintiffs' damages were not caused by an inherent characteristic of the product that cannot be eliminated, but, instead, were caused by the product being dangerously defective as outlined above.

22. Defendant's actions and inactions as set forth above, were intentional and deliberate, and Plaintiffs are also entitled to punitive damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs demand judgment of the Defendant, Pfizer, Inc., for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT TWO

### Failure to Warn

23. Plaintiffs adopt and incorporate by reference all the above allegations.

24. Bextra® can be unreasonably dangerous, even when used for its intended purpose.

25. Defendant, as a manufacturer of pharmaceutical drugs, is held to the level of knowledge of an expert in the field, and, further, Defendant had knowledge of the dangerous risks and side-effects of Bextra®.

26. Joseph Whitaker did not have the same knowledge as Defendant and no adequate warning was communicated to him.

27. Defendant had a continuing duty to warn consumers, including the Plaintiffs, of its product, and the risks and dangers associated with it, and negligently and/or wantonly breached its duty as follows:

    a.    Failed to include adequate warnings with the medications that would alert consumers to the dangerous risks and serious side effects of Bextra®.

    b.    Failed to provide adequate post-marketing warnings and instructions after the Defendant knew, or should have known, of the significant risks of heart attack and death from the use of Bextra®.

    c.    Failed to adequately warn Plaintiffs that Bextra® should not be used by patients with already compromised cardiovascular conditions.

    d.    Failed to inform Plaintiffs that Bextra® had not been adequately and thoroughly tested for safety as a pain reliever.

28.    As a direct and proximate result of the actions and inactions of the Defendant as set forth above, Plaintiffs have sustained injuries and are entitled to damages enumerated below. Defendant's actions and inactions as set forth above, were intentional and deliberate, and Plaintiffs are also entitled to punitive damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs demand judgment of the Defendant, Pfizer, Inc., for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT THREE

### Breach of Warranty of Merchantability

29. Plaintiffs adopt and incorporate by reference all the above allegations.

30. When Defendant placed Bextra® into the stream of commerce, it knew that it would be used as a pain medication, and expressly and impliedly warranted to Joseph Whitaker that use of Bextra® was a safe and acceptable means of relieving pain and discomfort.

31. Joseph Whitaker reasonably relied upon the expertise, skill, judgment, and knowledge of the Defendant and upon the express and/or implied warranty that Bextra® was of merchantable quality and fit for use to relieve pain symptoms.

32. In fact, Bextra® was not of merchantable quality and was not safe or fit for its intended use because it was unreasonably dangerous and unfit for the ordinary purposes for which it is used, in that Bextra® caused serious injuries and damages. The medication breached the warranties because it was unduly dangerous in expected use and did cause undue injuries and death to the Plaintiffs.

33. As a direct and proximate result of the actions and inactions of the Defendant as set forth above, Plaintiffs have sustained injuries and are entitled to damages enumerated below. Defendant's actions and inactions as set forth above, were intentional and deliberate, and Plaintiffs are also entitled to punitive damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs demand judgment of the Defendant, Pfizer, Inc., for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT FOUR

### Negligence

34. Plaintiffs adopt and incorporate by reference all the allegations above.

35. Defendant negligently manufactured, designed, tested, researched and developed, labeled, packaged, distributed, promoted, marketed, advertised, and sold Bextra®, in the Commonwealth of Pennsylvania.

36. At all times material hereto, Defendant had a duty to exercise reasonable care in the design, manufacture, research and development, testing, processing, advertising, marketing, labeling, packaging, distribution, promotion, and sale of its medications.

37. Defendant breached its duty and was negligent in its actions, misrepresentations, and omissions toward Plaintiffs in the following ways:

   a. Failed to use reasonable care to test Bextra® which, if properly performed, would have shown that Bextra® had serious side effects, including, but not limited to, risk of heart attack, blood clots and death;

   b. Failed to use reasonable care to give warnings and instructions with Bextra®.

   c. Failed to use reasonable care to design and manufacture a pain reliever safe for its intended use.

   d. Failed to use reasonable care in the marketing and promotion of Bextra®.

38. Defendant knew, or should have known, that Bextra® had unreasonably dangerous risks and caused serious side effects of which Plaintiffs would not be aware. Defendant nevertheless advertised, marketed, sold, and distributed the medicine, knowing that there were safer methods and products for pain relief.

39. As a direct and proximate result of the actions and inactions of the Defendant as set forth above, Plaintiffs have sustained injuries and are entitled to damages enumerated below.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs demand judgment of the Defendant, Pfizer, Inc., for compensatory damages in an amount determined by the jury to be necessary and just.

## COUNT FIVE

### Wantonness

40. Plaintiffs adopt and incorporate by reference all the allegations above.

41. Defendant wantonly and recklessly manufactured, designed, tested, researched and developed, labeled, packaged, distributed, promoted, marketed, advertised, and sold Bextra®, in the Commonwealth of Pennsylvania.

42. At all times material hereto, Defendant had a duty to exercise reasonable care in the design, manufacture, testing, research and development, processing, advertising, marketing, labeling, packaging, distribution, promotion, and sale of Bextra®.

43. Defendant breached its duty and was wanton and reckless in its actions, misrepresentations, and omissions toward Plaintiffs in the following ways:

   a. Failed to test Bextra® which, if properly performed, would have shown that Bextra® had serious side effects, including, but not limited to, heart attack, blood clots and death;

    b.    Failed to give full and adequate warnings and instructions with Bextra®.

    c.    Failed to design and manufacture a pain medication safe for its intended use.

    d.    Failed to truthfully market and promote Bextra®.

44.    Defendant knew that Bextra® had unreasonably dangerous risks and caused serious side effects of which Plaintiffs would not be aware. Defendant nevertheless advertised, marketed, sold and distributed the medicine, knowing that there were safer methods and products for pain relief.

45.    As a direct and proximate result of the actions and inactions of the Defendant as set forth above, Plaintiffs have sustained injuries and are entitled to damages enumerated below. Defendant's actions and inactions as set forth above, were intentional and deliberate, and Plaintiffs are also entitled to punitive damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs demand judgment of the Defendant, Pfizer, Inc., for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT SIX

## Fraud, Misrepresentation and Suppression

46. Plaintiffs adopt and incorporate by reference all the allegations above.

47. Defendant fraudulently, intentionally and/or negligently misrepresented to Plaintiffs, the FDA, and the general public, whether Bextra® was safe and/or fraudulently, intentionally and/or negligently concealed material including adverse information regarding the safety of Bextra®.

48. Defendant made misrepresentations and actively concealed adverse information at a time when the Defendant knew, or should have known, that Bextra® had defects, dangers, and characteristics that were other than what the Defendant had represented to the FDA, and the consuming public, including the Plaintiffs. Specifically, the Defendant misrepresented to Plaintiffs, the FDA, and the consuming public that:

   a. Bextra®, when used as recommended, was safe for relief of pain symptoms.

   b. Bextra® had been pharmaceutically tested and was safe for use as a pain reliever, even in persons with cardiovascular conditions.

    c.       Bextra® was fully and adequately tested.

    d.       Bextra® had no serious adverse cardiovascular effects.

    e.       Bextra® was safe and effective.

49. Defendant knew, or should have known, that these representations were false and that Plaintiffs would rely on them, leading to the use of Bextra®. Defendant knew that physicians had been told the same false and fraudulent information about Bextra®, and that Plaintiffs and prescribing physicians would be relying on information, advertisements and statements made by Defendant about the use, safety and efficacy of Bextra®.

50. At the time of Defendant's fraudulent misrepresentations and active concealment, Plaintiffs were unaware of the falsity of the statements being made and believed them to be true.

51. Plaintiffs justifiably relied on, and/or were induced by, the misrepresentations made by Defendant regarding the safety and use of Bextra®, and in fact, used Bextra® as recommended.

52. Defendant concealed the truth from Plaintiffs, and the consuming public about the real safety and risks of Bextra®.

53.  Defendant had a post-sale duty to warn users and the public in a timely manner about the potential risks and complications associated with Bextra®. Much of the true information about Bextra® has only become known since its withdrawal on April 7, 2005.

54.  The misrepresentations and active concealment by the Defendant constitute a continuing tort against Plaintiffs.

55.  As a direct and proximate result of the actions and inactions of the Defendant as set forth above, Plaintiffs have sustained injuries and are entitled to damages enumerated below. Defendant's actions and inactions as set forth above, were intentional and deliberate, and Plaintiffs are also entitled to punitive damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs demand judgment of the Defendant, Pfizer, Inc., for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## **CLAIM FOR DAMAGES**

Plaintiff, JOSEPH WHITAKER, has sustained injuries and damages, and does make claim for these:

a.  Reasonable and necessary health care expenses incurred in the past;

b.  Reasonable and necessary health- care expenses that will be incurred in the future;

c.  Physical pain and suffering in the past;

d.  Physical pain and suffering which will be endured in the future;

e.  Mental anguish suffered in the past;

f.  Mental anguish which will be endured in the future;

g.  Physical disability and impairment, past and future;

h.  Lost wages in the past and future loss of wage-earning capacity; and

i.  All other incidental and consequential damages, fees and expenses.

Plaintiff, SANDRA WHITAKER has sustained the loss of companionship, services and intimacy of her spouse as a direct and proximate result of the physical and mental injuries suffered by Joseph Whitaker.


/s/_____
Attorneys For Plaintiffs


**PLAINTIFFS DEMAND A TRIAL OF ALL ISSUES BY STRUCK JURY.**

_____

***Please Serve the Defendant as Follows*:**
Pfizer, Inc.
Agent:  CT Corporation System
1635 Market St.
Philadelphia, PA 19103